**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RAZIYEH BEHZAD MEHR, *et al.*,

Plaintiffs,

v.

MARCO RUBIO,
*U.S. Secretary of State*,[1]

Defendant.

Case No. 24-cv-2197-MJS

# MEMORANDUM OPINION

Dr. Raziyeh Behzad Mehr, a radiologist and associate professor at an Iranian university, applied with her family—her spouse, Mostafa Sattari, and their two minor children (collectively, "Plaintiffs")—for an EB-2 immigrant visa. When Plaintiffs filed this case, they were still waiting to even be scheduled for a consular interview, but that interview has since taken place. After the interview, Plaintiffs were issued a "refusal" under Section 221(g) of the Immigration and Nationality Act ("INA") and were told that their application required further "administrative processing." But Plaintiffs continue to wait. In turn, Plaintiffs continue to press their claims of unreasonable delay under the Administrative Procedure Act ("APA") and the Mandamus Act against U.S. Secretary of State Marco Rubio in his official capacity. The Secretary moves to dismiss, arguing that the complaint fails to allege any viable claim for relief because: (1) Plaintiffs do not identify a clear, non-discretionary duty that remains to be carried out; (2) the doctrine of consular non-reviewability bars their claims; and (3) any delay in this case is not unreasonable under law. Agreeing on the third point, the Court **GRANTS** the motion (ECF No. 12).

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of State Marco Rubio is automatically substituted as the defendant in his official capacity in place of his predecessor, former Secretary Antony Blinken.

**RELEVANT STATUTORY FRAMEWORK**

The INA provides for a category of U.S. immigration visas known as EB-2 visas, which are available to foreign nationals who are "members of the professions holding advanced degrees" or individuals "of exceptional ability[.]" *See* 8 U.S.C. § 1153(b)(2); *see also Liu v. I.N.S.*, 274 F.3d 533, 534 (D.C. Cir. 2001) (providing an overview of the EB-2 visa framework).

To start the visa application process, an applicant must submit a Form I-140 Immigrant Petition ("I-140"), which U.S. Citizen and Immigration Services ("USCIS") must approve. *See* 8 C.F.R. § 204.5(k). Typically, an EB-2 petitioner must include both a job offer and a certification from the U.S. Department of Labor with their application, but those requirements may be waived when deemed in the "national interest." *Liu*, 274 F.3d at 534 (quoting 8 U.S.C. § 1153(b)(2)(B)(i)). If USCIS approves the Form I-140, then USCIS forwards the petition to the National Visa Center ("NVC"), *see* 8 C.F.R. § 204.5(n)(1), at which point the applicant must complete and submit a Form DS-260 (Immigrant Visa Electronic Application) to the NVC and attend a visa interview at a U.S. consulate, *see* 22 C.F.R. §§ 42.61–63. Following the interview, U.S. State Department regulations require that a consular officer either issue or refuse the visa, or in some instances, discontinue granting the visa. *See* 22 C.F.R. §§ 41.121(a), 42.81(a); *see also Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022). Separately, and relevant here, if the consular officer believes they need more information to determine eligibility, the consular officer may place the application into "administrative processing" per Section 221(g) of the INA. *See* 8 U.S.C. § 1201(g); 22 C.F.R. § 42.63(c); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022). This "administrative processing" step is sometimes referred to as a "221(g) notice" or "221(g) refusal." *See Arapov v. Rubio*, 2025 WL 2732722, at *4–6 (D.D.C. Sept. 25, 2025). No statute or regulation prescribes any concrete timelines for such "administrative processing."

## FACTUAL AND PROCEDURAL BACKGROUND

Given the present procedural posture, the Court's background recitation accepts Plaintiffs' allegations as true. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Dr. Raziyeh Behzad Mehr and her family are Iranian citizens and residents. (ECF No. 3-1 ("Compl.") ¶¶ 17–19.) Dr. Behzad Mehr is a "respected radiologist" who works as an "Associate Professor of Radiology at Zabol University of Medical Science," in Zabol, Iran, with a particular focus on "cancer treatments for children and adolescents." (*Id.* ¶¶ 17, 51–52.) She has applied for an EB-2 immigrant visa, which includes her family members—her spouse, Mr. Sattari, and their two minor children—as derivative applicants. (*Id.* ¶¶ 17–19, 50–53.)

On April 21, 2022, Plaintiffs submitted a Form I-140 with a national interest waiver request, which USCIS approved on February 4, 2023. (*Id.* ¶¶ 54–55.) From there, the application went to NVC for processing. Plaintiffs submitted a Form DS-260 on March 31, 2023, and NVC confirmed that Plaintiffs were documentarily qualified on April 27, 2023. (*Id.* ¶ 56–57.)

After waiting more than a year for their interview and making "reasonable attempts" to advance the process—including with the help of a "congressional inquiry" from the office of then-U.S. Senator Marco Rubio (*see* Compl. ¶ 60; *see also* ECF No. 1-5)—Plaintiffs filed this action in July 2024.[2] Perhaps not coincidentally, the consular interview followed soon after, taking place on November 18, 2024, at the U.S. Embassy in Armenia. (ECF No. 13 ("Opp'n") at 16.) At the close of that interview, the consular officer advised Plaintiffs that their application would be placed into administrative processing, directed them to complete another online questionnaire (Form DS-5535), and issued a Section 221(g) refusal. (*See id.*; *see also* ECF No. 13-11.) Plaintiffs completed

[2] The Court would be remiss in failing to highlight that Secretary Rubio—whose prior Senate office was making inquiries to the State Department on behalf of Plaintiffs about their application—now oversees the very agency with the power to render a final decision on their application. But even still, they wait.

the questionnaire that same day. (Opp'n at 16.) But they have continued to sit in "administrative processing" limbo ever since. (*Id.* at 16–17; ECF Nos. 17 & 18, Joint Status Reports.)

As of this ruling—nearly 21 months after Plaintiffs' consular interview and the resulting 221(g) refusal—Plaintiffs' application remains pending with no final decision.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal on the basis that the court lacks subject-matter jurisdiction. A motion brought under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). The plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (citation omitted). But courts must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiff's favor." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).

Under Federal Rule of Civil Procedure 12(b)(6), courts should dismiss a complaint that fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Under Rule 12(b)(6), a court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). That said, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot forestall a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Invoking Rule 12(b)(1) and 12(b)(6), the Secretary presses three arguments for dismissal: (1) there is no clear and discrete duty that obligates any further action on Plaintiffs' application

following the Section 221(g) refusal and placement into administrative processing; (2) the doctrine of consular non-reviewability bars judicial review; and (3) Plaintiffs fail to plausibly allege a claim of unreasonable delay under applicable caselaw. (*See generally* ECF No. 12 ("Mem."); ECF No. 15 ("Reply").) This Court previously considered and disagreed with the first two arguments in substantially similar cases, *see Arapov* 2025 WL 2732722, at *4–6; *see also Khodabakhshian v. Rubio*, 2025 WL 3135640 at *3–4 (D.D.C. Nov. 10, 2025), and the Secretary fails to offer any new or particularized reason that would point toward a different result here. But on balance, the Court need not wade into those first two arguments because it agrees with the Secretary's third: Plaintiffs fail to plausibly allege a claim of *unreasonable* delay under applicable law, notwithstanding their understandable frustration with the longstanding pendency of their visa application.[3]

"To state a claim for unreasonable delay, plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and second, that the delay was unreasonable." *Da Costa v. Immigration Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (cleaned up). "There is no per se rule as to how long is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United,* 372 F.3d 413, 419 (D.C. Cir. 2004) (citation and quotation marks omitted). Instead, "to guide [the] unreasonable-delay analysis," courts typically weigh the six factors identified by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984)—often shorthanded as the "*TRAC* factors." *Da Costa*, 80 F.4th at 340. They are as follows:

(1) the time agencies take to make decisions must be governed by a rule of reason;

[3] As has been true in other cases, the Secretary's motion does not specify which arguments they make—or which claims they attack—under Rule 12(b)(1) versus Rule 12(b)(6). But again, there is no need for the Court to fully dive into those nuances with any real depth because it dismisses the case based on Plaintiffs' inability to show unreasonable delay, and that issue plainly implicates the implausibility of their claims under Rule 12(b)(6), rather than the Court's subject-matter jurisdiction under Rule 12(b)(1).

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up).

These factors are not "ironclad," but rather serve as "useful guidance in assessing claims of agency delay." *Id.* After all, whether an agency's delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Instead, "[e]ach case must be analyzed according to its own unique circumstances" because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). That said, the D.C. Circuit has stressed that the two "most important" factors in these types of cases are the first and the fourth ones: "whether the agency's timing of adjudications follows a 'rule of reason'" and "the effect that an order 'expediting delayed action' would have on 'agency activities of a higher or competing priority.'" *Da Costa*, 80 F.4th at 340 (citing *TRAC*, 750 F.2d at 80).

Applying these principles here, and accepting Plaintiffs' allegations as true, the Court agrees with the Secretary that the complaint fails to state a claim of unreasonable delay under either the APA or the Mandamus Act. To explain why, the Court walks through the various *TRAC* factors.

***Factors One and Two***. The first two factors are often considered in tandem, as they focus collectively on whether the agency's timeline is based on some "rule of reason" and whether Congress established any timetable for action. *Majlesi v. Rubio*, 2026 WL 654377, at *7 (D.D.C. Mar. 9, 2026) ("In essence, these two factors require the court to evaluate 'whether there is any rhyme or reason—congressionally prescribed or otherwise—for the agency's delay.'") (cleaned up) (quoting *Rashidian v. Garland*, 2024 WL 1076810, at *6 (D.D.C. Mar. 8, 2024)).

Taking the factors in reverse order, there is no congressionally imposed deadline for adjudicating visa applications like the one at issue here. At most, Plaintiffs point to a subsection of the INA that describes "the sense of Congress" as to the typical anticipated timeframes for completion. (Opp'n at 51–52 (citing 8 U.S.C. § 1571(b)).) But the D.C. Circuit has described that language as an "aspirational statement" and not a hard "deadline," *Da Costa*, 80 F.4th at 344, and even Plaintiffs acknowledge that the provision is "merely precatory" (*see* Opp'n at 52).

With no "congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). And there is an abundance of it in this District that illuminates the tipping point into unreasonableness: typically, in this context, "delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Diakanua v. Rubio*, 2025 WL 958271, at *6 (D.D.C. Mar. 31, 2025) (quoting *Sarlak*, 2020 WL 3082018, at *6); *see also, e.g.*, *Majlesi*, 2026 WL 654377, at *8 (finding delay of "a little over three years" from interview not unreasonable); *Al Saedi v. LeBailly*, 2025 WL 485410, at *5 (D.D.C. Feb. 13, 2025) (same as to 28-month delay); *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 76 (D.D.C. 2022) (same as to three-year delay). In tabulating the length of the delay, most courts measure "using the period between the last government action and the issuance of the opinion." *Majlesi*, 2026 WL 654377 at *8 (quoting *Asadi v. U.S. Dep't of State*,

2024 WL 3835409, at *6 n.2 (D.D.C. Aug. 15, 2024)). The undersigned recently endorsed that approach, *see Khodabakhshian v. Rubio*, 2026 WL 2279988, at *3–4 (D.D.C. Aug. 7, 2026), which here means a delay measuring at about 21 months, counting from Plaintiffs' consular interview in November 2024 through today. Unfortunately for Plaintiffs, though, that 21-month stretch easily falls within the range that courts in this District decline to find unreasonable. So, the first factors—among the "most important" ones, *Da Costa*, 80 F.4th at 340—cut against Plaintiffs.[4]

***Factor Four***. The fourth factor focuses on "the effect of expediting delayed action on agency activities of a higher or competing priority[.]" *TRAC*, 750 F.2d at 80. This factor likewise tilts against Plaintiffs. If the Court grants the relief they seek, they would suddenly be prioritized over so many others who likewise await action on their visa applications. The D.C. Circuit has been critical of this sort of "line jumping" for precisely that reason—frontloading one application comes "at the expense of other similarly situated applicants" and "impose[s] offsetting burdens on equally worthy" applicants who continue to wait in line. *Da Costa*, 80 F.4th at 343–44 (citation omitted); *see also Zoroofchi v. Rubio*, 2025 WL 928607, at *5 (D.D.C. Mar. 27, 2025) ("Since consular processing capacity is a zero-sum game, an order expediting processing of [one] application would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own.") (cleaned up). Plaintiffs' only real response is to argue

---

[4] Plaintiffs' briefing seems to argue that the Court's delay analysis should look back farther, not simply to the date of the last government action in November 2024 but rather to the original filing of the petition in April 2022. (*See* Opp'n at 50–51.) Plaintiffs' only support is a single case out of the Southern District of California but no authority from this District—which, as explained, overwhelmingly relies on the "last government action" benchmark discussed above. Regardless, even using the earlier starting point proposed by Plaintiffs, the resulting delay would still measure at less than 4.5 years, and that period—while obviously longer—still falls within the range that courts find not unreasonable for purposes of the mandamus and APA relief that Plaintiffs seek. *See, e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) ("Even if the Court started the clock when [plaintiff] filed the petition five years ago, … delays between three to five years are often not unreasonable." (citation and quotation marks omitted)); *Varghese v. Blinken*, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (similar, as to delay of about four years).

that these concerns are overblown because there is no formal queue that they would be leapfrogging. (Opp'n at 54 ("Defendant has not established that there is a queue, let alone Plaintiffs' place therein.") But even if true, their argument glosses over the broader dynamic of asking to "be prioritized for processing ahead of others," *Majlesi*, 2026 WL 654377, at *8 (quoting *Augustin v. Blinken*, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023)), which holds true whether Plaintiffs and the other applicants are awaiting action in some sequential order or not.

***Factors Three and Five***. These factors collectively "focus on the interests affected by agency delay," *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 817 (D.C. Cir. 2024), so they are often discussed together. The third factor, more specifically, contemplates that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake," while the fifth factor considers "the nature and extent of the interests prejudiced by the delay." *Id.* (quoting *TRAC*, 750 F.2d at 80). Plaintiffs say these considerations favor relief because they "have suffered and will continue to suffer emotionally and psychologically due to the prolonged and indefinite delay." (Opp'n at 53.) They allege that "Dr. Behzad Mehr's career now faces a standstill as she has had to put all future professional endeavors on hold[,]" that they "have been severely struggling amidst an increase in security threats in Iran," and that the children need to expedite their arrival to the U.S. to ensure their adjustment "for their development and future contributions to U.S. society." (Compl. ¶¶ 64–66.) These effects are real and regrettable, and the Court takes them seriously, such that factors three and five tilt somewhat in Plaintiffs' favor. *See Hussain v. Baker*, 2026 WL 1815522, at *3 (D.D.C. June 24, 2026); *Ahmadi v. Scharpf*, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024). But at the same time, these concerns are not unlike those shared by so many other languishing visa applicants facing similar hardships. So, without more, the Court cannot conclude that the articulated harms "threaten

[Plaintiffs'] physical health and well-being in a manner compelling enough to overcome Defendant['s] advantage on the more important factors." *Majlesi*, 2026 WL 654377, at *9.

***Factor Six***. Finally, the sixth *TRAC* factor examines "whether there is any impropriety lurking behind agency lassitude." *Da Costa*, 80 F.4th at 345 (cleaned up); *see also Fakhimi v. Dep't of State*, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023) (explaining that this factor calls on courts to ask "whether the agency has acted in bad faith in delaying action") (citation omitted). Here, Plaintiffs do not plead any facts to suggest the Secretary is acting in bad faith. At most, they allege in their briefing that the delay itself "is an act of extreme bad faith[.]" (Opp'n at 58.) But that argument cannot suffice. If it could, bad-faith finding would become a foregone conclusion in every one of these cases because the underlying delay is what triggers the broader analysis in the first place. That said, "the lack of plausible allegations of impropriety does not weigh against [Plaintiffs]," *Fakhimi*, 2023 WL 6976073, at *11, so this final consideration is simply neutral.

* * *

On balance, after applying the *TRAC* factors to Plaintiffs' well-pled allegations, the Court concludes that the complaint fails to state a plausible claim for unreasonable delay.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss (ECF No. 12). The Court will issue a separate order so stating.

Dated: August 13, 2026

MATTHEW J. SHARBAUGH
United States Magistrate Judge